UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT WALKER,

                              Plaintiff,

        v.

OFFICER TROOPER TYLER CARROZZO, *et al.*,

                              Defendants.

No. 21-CV-2975 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Ryanne Guy Konan, Esq.
Ryanne Konan Law Office
Wappingers Fall, NY
*Counsel for Plaintiff*

Amanda Yoon, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M.  KARAS, United States District Judge:

        Robert Walker ("Plaintiff") brings this Action against Officer Troopers Tyler Carrozzo and Corey Ranno (together, "Defendants"), pursuant to 42 U.S.C. § 1983 ("§ 1983"), for false arrest, malicious prosecution, and excessive use of force.  (*See generally* Am. Compl. ("AC") (Dkt. No. 16).)  Before the Court is Defendants' Motion for Summary Judgment against Plaintiff for all the claims brought in the Amended Complaint except for excessive use of force against Defendant Ranno and Plaintiff's Cross-Motion for Summary Judgment against Defendants for false arrest. (*See* Dec. in Support of Mot. (Dkt. Nos. 41, 44).)

        For the reasons stated herein, Plaintiff's Motion for Summary Judgment is denied, and Defendants' Motion for Summary Judgment is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule

56.1, specifically:

- Defendants' 56.1 Statement in Support of their Motion ("Defs.' 56.1")

- Plaintiff's 56.1 Statement in Support of his Motion and Response to Defendants'

  56.1 Statement ("Pl.'s 56.1")[1]

- Defendants' Response to Plaintiff's 56.1 Statement ("Defs.' 56.1 Resp.")

---

[1] Plaintiff also submitted a reply statement of facts.  (Dkt. No. 52.)  However, "Local Civil Rule 56.1 does not provide for a 'reply' in further support of a Rule 56.1 statement of undisputed facts" but also "does not prohibit such replies."  *Cap. Rec., LLC v. Vimeo, LLC*, Nos. 09-CV-10101, 09-CV-10105, 2018 WL 4659475, at *1 (S.D.N.Y. Sept. 7, 2018).  Absent explicit guidance in the local rules, "[c]ourts in this District have concluded that a reply Rule 56.1 statement constitutes 'a procedurally improper attempt to have the last word in a manner that is not contemplated by the local rules.'"  *Mayagüez S.A. v. Citibank, N.A.*, No. 16-CV-6788, 2022 WL 901627, at *9 (S.D.N.Y. Mar. 25, 2022) (quoting *G.S. v. Pleasantville Union Free Sch. Dist.*, No. 19-CV-6508, 2020 WL 4586895, at *1 n.2 (S.D.N.Y. Aug. 10, 2020)).

Accordingly, courts provided such filings have regularly disregarded them.  *See, e.g., Julian v. MetLife, Inc.*, No. 17-CV-957, 2021 WL 3887763, at *6 (S.D.N.Y. Aug. 31, 2021) (granting a motion to strike), *leave to appeal denied sub nom. McKinney v. Metro. Life Ins. Co.*, No. 21-2209, 2021 WL 7451180 (2d Cir. Dec. 21, 2021); *Roth v. Cheesecake Factory Restaurants, Inc.*, No. 19-CV-6570, 2021 WL 1103505, at *2 (S.D.N.Y. Feb. 5, 2021) (considering only facts asserted in response to new facts raised in the non-movant's response), *report and recommendation adopted*, 2021 WL 912416 (S.D.N.Y. Mar. 10, 2021); *Cunningham v. Cornell Univ.*, No. 16-CV-6525, 2019 WL 4735876, at *1 n.3 (S.D.N.Y. Sept. 27, 2019) ("The [c]ourt will not consider . . . [the] [d]efendants' [r]eply except to the extent it responds to new facts . . ."); *Pape v. Dircksen & Talleyrand Inc.*, No. 16-CV-5377, 2019 WL 1435882, at *3 (E.D.N.Y. Feb. 1, 2019) (concluding that "the [c]ourt declines to consider the Reply Rule 56.1 Statement, except to the extent it responded to [] new facts"), *report and recommendation adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019).

Ultimately, the Court agrees that the "Court is capable of determining whether [the non-movant] improperly disputed a fact without needing [the movant] to file a procedurally improper document explaining as much."  *G.S.*, 2020 WL 4586895, at *1.  Thus, the Court will not consider Plaintiff's reply 56.1 statements.

Additionally, where appropriate, the Court cites directly to the admissible evidence submitted by the Parties. The facts as described below are in dispute to the extent indicated.

Defendants were working as New York State Troopers on November 19, 2018. (Defs.' 56.1 ¶ 1.) On November 19, 2018, at approximately 10:32 P.M., on the I-87 Thruway, Defendants stopped a vehicle with plate number JCV 1891. (*Id*. ¶ 2.) Defendants observed the vehicle change lanes without a signal, move from one lane to another lane unsafely, and also observed that the vehicle was traveling approximately 15 miles below the posted speed limit. (*Id*. ¶ 3.) Plaintiff was the registered owner of the stopped vehicle bearing plate number JCV 1891. (*Id*. ¶ 4.) When Defendants approached Plaintiff's vehicle after the stop, Plaintiff was sitting in the front passenger seat, and his friend, Johnny Cooper ("Cooper"), was sitting in the driver's seat. (*Id*. ¶ 5.) Defendant Carrozzo approached the vehicle on the driver's side and asked Cooper for his license and registration, and Defendant Ranno approached the passenger side. (Pl.'s 56.1 ¶ 23.) Cooper and Plaintiff gave conflicting statements as to the purpose of their travel. (Carrozzo Decl. ¶¶ 14–15; Ranno Decl. ¶¶ 15, 17; Pl.'s 56.1 ¶ 26.)

Plaintiff had been traveling back and forth between New Jersey and Poughkeepsie, and during that trip, he had procured heroin. (Defs.' 56.1 ¶¶ 6–7.) Plaintiff was in possession of the heroin, which belonged to him, at the time Defendants stopped his vehicle. (*Id*. ¶¶ 8–9.)

The Parties dispute what occurred after Plaintiff's car was stopped. Plaintiff contends that he "was pulled [out] of the car, forcibly searched, pepper sprayed, [and] punched in the face by both Defendant[s]." (Pl.'s 56.1 ¶ 10.) Plaintiff testified that he explicitly stated to Defendants that they could not search him or the car. (Yoon Decl. Ex. A, at 85:8–86:8.) "[T]he officer proceeded to search [Plaintiff] against [his] will" and Plaintiff "backed up" and then "fell on the ground" backwards, after which he was beaten. (*Id*. at 86:20–87:20.) It is not disputed that

Defendant Ranno delivered close fist strikes to Plaintiff's face.  (Pl.'s 56.1 ¶ 35.)  It is also not disputed that at some point, Plaintiff lost consciousness and was taken to the hospital.  (*Id.* ¶¶ 37, 39.)  Plaintiff alleges he never used force against either of the officers.  (*Id.* ¶ 38.)

Defendants, on the other hand, contend Defendant Ranno asked Plaintiff if he could search his vehicle and his person, to which Plaintiff, without any instructions from Defendants, exited his vehicle and raised his hands above his head with his palms facing toward [Defendant Ranno] and spread his feet in a wide stance.  (Ranno Decl. ¶ 18; Carrozzo Decl. ¶¶ 17–18.)  Defendant Ranno understood Plaintiff's actions to indicate that he consented to a search of his body and his vehicle.  (Ranno Decl. ¶ 19.)  Defendants state that while Defendant Ranno patted Plaintiff down, he felt a rectangular object protruding from Plaintiff's inner left thigh.  (*Id.* ¶ 20.)  Defendant Ranno suspected that the rectangular object could be a weapon.  (*Id.*)  When Defendant Ranno asked Plaintiff what the rectangular object was, Plaintiff suddenly turned around from the vehicle and struck Defendant Ranno, causing him to drop his flashlight and trip over his feet.  (Ranno Decl. ¶ 21; Carrozzo Decl. ¶ 19.)  Plaintiff then proceed to flee on foot northbound, and Defendant Ranno ran after Plaintiff.  (Ranno Decl. ¶ 22; Carrozzo Decl. ¶ 20.)  Defendant Ranno told Plaintiff numerous times to stop running, but Plaintiff continued to run.  (Ranno Decl. ¶ 24.)  Defendant Ranno saw Plaintiff reach inside of his pockets and pants; he was worried that Plaintiff was reaching for the rectangular object that he suspected was a weapon or controlled substance.  (Ranno Decl. ¶ 25; Carrozzo Decl. ¶ 21.)  When Plaintiff turned around, Defendant Ranno disbursed a half second burst of pepper spray on Plaintiff's face, and Plaintiff lost his balance and fell and struck the back of his head on the pavement.  (Ranno Decl. ¶¶ 25–26; Carrozzo Decl. ¶¶ 22–23.)  When Defendant Ranno tried to handcuff Plaintiff, Plaintiff turned to his stomach, rolled from side to side, and locked his hands under his stomach to

4

prevent Defendant Ranno from taking his hands.  (Ranno Decl. ¶¶ 28–29; Carrozzo Decl. ¶ 24.)
Defendant Ranno struggled with Plaintiff and was eventually able to get him under control.
(Ranno Decl. ¶ 30; Carrozzo Decl. ¶ 25.)  Defendants Ranno and Carrozzo then placed
Plaintiff's hands behind his back and applied handcuffs.  (Ranno Decl. ¶ 31; Carrozzo Decl. ¶
25.)

Defendants contend that Defendant Carrozzo did not strike, hit, or use pepper spray on
Plaintiff.  (Defs.' 56.1 ¶ 19.)  Plaintiff disputes this, stating instead that he "was struck by both
officers until he lost consciousness."  (Pl.'s 56.1 ¶ 19.)

Defendants state that "during Plaintiff's arrest on November 19, 2018, Plaintiff was
belligerent."  (Defs.' 56.1 ¶ 18.)  Plaintiff disputes this fact.  (Pl.'s 56.1 ¶ 18.)  In the portion of
Plaintiff's deposition Defendants cite to in support of this proposition, Plaintiff testified that he
"probably was belligerent when [he] woke up and found [him]self in handcuffs." (Defs.' 56.1 ¶
18.)

Defendants recovered heroin from Plaintiff which was packaged in approximately 350
wax paper envelopes in a tube sock that was duct taped to Plaintiff's left inner thigh.  (*Id*. ¶¶ 10–
12.)  Plaintiff contends that the heroin was found after Plaintiff was arrested.  (Pl.'s 56.1 ¶ 36.)
Defendants argue that this is a disputed fact, and state in response that "Defendants recovered
heroin [on] Plaintiff's person after Plaintiff's vehicle was stopped."  (Defs.' 56.1 Resp. ¶ 36.)
However, the declarations Defendants cite to in support of this proposition explicitly state that
the heroin was recovered after Plaintiff was handcuffed.  (Konan Decl. Ex. 3, at 70:16-20; Ex. 1,
at 111:16-25; Ranno Decl. ¶ 33; Carrozzo Decl. ¶ 27.)  Accordingly, there is no dispute that the
heroin was recovered after Plaintiff was handcuffed.

Plaintiff was taken to Orange County jail on November 19, 2018; the jail would not accept him until he had been brought to the hospital because he was unconscious.  (Pl.'s 56.1 ¶ 39.)

Plaintiff was arrested for intent to sell and possession of a controlled substance (N.Y. Penal Law § 220.16, a Class B felony, and N.Y. Penal Law § 220.09, a Class C felony, respectively), obstructing governmental administration (N.Y. Penal Law § 195.05, a misdemeanor), and resisting arrest (N.Y. Penal Law § 205.30, a misdemeanor).  (Defs.' 56.1 ¶ 13.)  Defendant Carrozzo provided the sworn statements in the felony complaints and misdemeanor information issued to Plaintiff and signed them.  (*Id*. ¶ 14.)  Defendant Carrozzo typed up his incident report after speaking with Defendant Ranno.  (Pl.'s 56.1 ¶ 32.)  Defendants did not testify in court or before a grand jury in connection with the criminal charges against Plaintiff.  (Defs.' 56.1 ¶ 16.)  Defendants did not fabricate any evidence in connection with the incident at issue.  (*Id*. ¶ 17.)  The charges against Plaintiff were dismissed.  (*Id*. 56.1 ¶ 15; Pl.'s 56.1 ¶ 31.)

B.  Procedural History

Plaintiff filed this lawsuit on April 8, 2021.  (Dkt. No. 4.)  Plaintiff filed his Amended Complaint on June 28, 2021.  (Dkt. No. 16.)  Defendants filed their Motion for Summary Judgment on June 3, 2022.  (Defs.' Mem. (Dkt. No. 38).)  Plaintiff filed his Motion in Opposition and Cross Motion for Summary Judgment on July 19, 2022.  (Pl.'s Mem. (Dkt. No. 46).)  Defendants filed their Reply and Opposition to Plaintiff's Cross Motion for Summary Judgment on August 24, 2022.  (Defs.' Reply Mem. (Dkt. No. 49).)  Plaintiff filed his Reply on September 6, 2022.  (Pl.'s Reply Mem. (Dkt. No. 51).)

II.  Discussion

A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding

8

"statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

"Where, as here, cross motions for summary judgment are filed, [courts] 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (quoting *Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002)); *see also Dish Network Corp. v. Ace Am. Ins. Co.*, No. 20-268, 2021 WL 6058146, at *3 (2d Cir. Dec. 22, 2021) ("When both parties have moved for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017))); *Est. of Smith v. Cash Money Recs., Inc.*, No. 14-CV-2703, 2018 WL 2224993, at *3 (S.D.N.Y. May 15, 2018) ("On dueling motions for summary judgment, the court must evaluate each party's motion on its merits and determine whether either is entitled to judgment as a matter of law" (citing *Coutard*, 848 F.3d at 114)).

B.  Analysis

1.  False Arrest

A §1983 claim for false arrest "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A § 1983 false arrest claim is substantially the same as a claim of false arrest under New York law.  *Id*.  New York law requires a plaintiff to show "that (1) the

defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the

plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise

privileged." *Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at *5

(S.D.N.Y. July 20, 2022) (citation omitted).  "[T]he existence of probable cause to arrest

constitutes justification and is a complete defense to an action for false arrest . . . under § 1983."

*Dillon v. Rosen*, No. 22-CV-7035, 2022 WL 4538397, at *3 (S.D.N.Y. Sept. 28, 2022) (quoting

*Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007)); *see also Figueroa v. Mazza*, 825 F.3d 89,

99 (2d Cir. 2016) ("The existence of probable cause to arrest . . .  will defeat a claim of false

arrest under the Fourth Amendment.").  "[A] claim for false arrest will not lie so long as the

arresting officer had probable cause to arrest the plaintiff for some crime." *Jaegly v. Couch*, 439

F.3d 149, 150 (2d Cir. 2006).

Generally speaking, officers have probable cause to arrest when they have "reasonably

trustworthy information as to facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that an offense has been committed by the person to be arrested."

*Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (internal quotation marks,

alterations, and citation omitted). As the Second Circuit recently observed:

> To determine the existence of probable cause, a court considers the totality of the
> circumstances, based on "a full sense of the evidence that led the officer to believe
> that there was probable cause to make an arrest."  The court considers those facts
> available to the officer at the time of the arrest and immediately before it.  The
> significance of each of these factors may be enhanced or diminished by
> surrounding circumstances.

*Guan v. City of N.Y.*, 37 F.4th 797, 804 (2d Cir. 2022) (quotation marks and citations omitted).

Plaintiff was arrested for possession of a controlled substance with intent to sell (N.Y.

Penal Law § 220.16, a Class B felony), possession of a controlled substance (N.Y. Penal Law §

220.09, a Class C felony), obstructing governmental administration (N.Y. Penal Law § 195.05, a

misdemeanor), and resisting arrest (N.Y. Penal Law § 205.30, a misdemeanor). (Defs.' 56.1 ¶ 13.) Defendants argue they are entitled to summary judgment on Plaintiff's false arrest claim because they had probable cause to arrest Plaintiff for possession of a controlled substance "after [Defendant] Ranno searched Plaintiff and found" heroin. (Defs.' Mem. 6.) Plaintiff argues that he is entitled to summary judgment on the false arrest claim because Defendants did not have reasonable suspicion to search Plaintiff, which constitutes "bad faith and illegal conduct[]" and "negates the existence of probable cause." (Pl.'s Mem. 10–13.) To determine whether Defendants had probable cause to arrest Plaintiff for any crime, the Court will analyze each possible offense in turn.

<u>a. Controlled Substance Offenses</u>

Under N.Y. Penal Law § 220.16, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it." *Id*. Under N.Y. Penal Law § 220.09, "[a] person is guilty of criminal possession of a controlled substance . . . when he knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more[.]" *Id.*[2]

Defendants assert in their briefing that when Defendant Ranno patted Plaintiff down, he felt a rectangular object protruding from Plaintiff's inner left thigh. (Defs.' Mem. 2–3.) However, this fact was not included in Defendants' Rule 56.1 Statement. (*See generally* Defs.' 56.1.) Local Rule 56.1 is designed to place the responsibility on the parties to clarify the

---

[2] Heroin is classified as a narcotic drug under N.Y. Penal Law § 220.00 and N.Y. Pub. Health Law § 3306.

elements of the substantive law which remain at issue because they turn on contested facts. *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000); *see also Curtis v. Hilton Garden Inn N.Y./Cent. Park*, No. 18-CV-3068, 2022 WL 4095905, at *4 (S.D.N.Y. Sept. 7, 2022) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.") (quoting *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 74 (2d Cir. 2001)).  Accordingly, without undertaking "an assiduous review of the record," this Court cannot determine whether the fact that Defendant Ranno felt a rectangular object protruding from Plaintiff's thigh is disputed.  *Monahan*, 214 F.3d at 292 (holding that the trial court "is not required to consider what the parties fail to point out" in 56.1 statements).  Therefore, this Court cannot determine whether Defendants discovered evidence by means of the pat-down that created probable cause to arrest Plaintiff for a controlled substance offense, or for that matter, what Plaintiff would have said in response to an assertion that the narcotics were first felt during the pat-down search.

Defendants contend that there was "more than enough probable cause to arrest Plaintiff for possession of a controlled substance after [Defendant] Ranno searched Plaintiff and found 350 wax paper envelopes containing heroin hidden in his pants next to his left thigh."  (Defs.' Mem. 5–6.)  However, in their declarations, both Defendants assert that the controlled substance was found *after* Plaintiff was handcuffed.  (Ranno Decl. ¶ 33; Carrozzo Decl. ¶ 27.)  "Handcuffs are generally recognized as a hallmark of a formal arrest."  *United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) (collecting cases).  Indeed, under "ordinary circumstances . . . using handcuffs [is] not part of a *Terry* stop[.]"  *United States v. Vargas*, 369 F.3d 98, 102 (2d Cir. 2004) (quoting *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001)); *Grice v. McVeigh*,

873 F.3d 162, 167 (2d Cir. 2017) ("Handcuffing is ordinarily not incident to a *Terry* stop, and tends to show that a stop has ripened into an arrest.").  However, as the Second Circuit has recognized, not every use of handcuffs during a *Terry* stop ripens the stop into an arrest.  *See United States v. Bailey*, 743 F.3d 322, 340 (2d Cir. 2014).  Rather, this form of "intrusive and aggressive police conduct," *Vargas*, 369 F.3d at 102 (citation and quotation marks omitted), may be justified in the course of a *Terry* stop, where "police have a reasonable basis to think that the person detained poses a present physical threat and that handcuffing is the least intrusive means to protect against that threat."  *Bailey*, 743 F.3d at 340; *see also Newton*, 369 F.3d at 674 ("[W]here an officer has a reasonable basis to think that the person stopped poses a present physical threat to the officer or others, the Fourth Amendment permits the officer to take necessary measures . . . to neutralize the threat without converting a reasonable stop into a *de facto* arrest.") (quotation marks and citation omitted).

There is a dispute of fact as to what occurred after Defendants stopped Plaintiff's vehicle. Defendants contend that Plaintiff was compliant with their instructions and exited the vehicle. (Ranno Decl. ¶ 18; Carrozzo Decl. ¶¶ 17–18.)  Defendant Ranno then patted down Plaintiff, during which he felt a rectangular object protruding from Plaintiff's inner left thigh which he thought could be a weapon.  (Ranno Decl. ¶ 20; Carrozzo Decl. ¶ 19.)  They further contend that Plaintiff then struck Defendant Ranno and fled on foot.  (Ranno Decl. ¶¶ 21–22; Carrozzo Decl. ¶¶ 19–20.)  Plaintiff on the other hand, contends Defendants "search[ed] [him] against [his] will" and Plaintiff "backed up" and then "fell on the ground" backwards, after which he was beaten. (Yoon Decl. Ex. A, at 86:20–87:20.)  As discussed above, it is not clear from the record whether Defendant Ranno felt an object protruding from Plaintiff's thigh.

13

Under Defendants' facts, the use of handcuffs was justified because Plaintiff posed a present physical threat when he struck one Defendant, fled, and Defendants suspected that he was armed—therefore handcuffing did not immediately convert the encounter to a formal arrest. *See Vargas*, 369 F.3d at 102 (holding that handcuffing did not constitute a formal arrest during a *Terry* stop when defendant fled from officers, continued to struggle with them when stopped, and officers had reliable information that he was carrying a weapon, and therefore defendant was only formally arrested after he was frisked and a firearm was discovered); *Newton*, 369 F.3d at 675 (holding that handcuffing a potentially armed suspect to search him for a firearm was not an arrest); *United States v. Hagood*, No. 20-CR-656, 2021 WL 2982026, at *17 (S.D.N.Y. July 15, 2021) (holding that handcuffing pursuant to a *Terry* stop did not constitute an arrest when there was indication that defendant may flee and that he possessed a gun).  However, viewing the facts in the light most favorable to Plaintiff, he was compliant with Defendants' directions and fell backwards during the pat-down after which he was beaten and placed in handcuffs—these facts do not indicate he posed a present threat to the officers, and the handcuffing would therefore constitute a formal arrest.  *See United States v. Compton*, No. 13-CR-405, 2014 WL 12674478, at *6 (N.D.N.Y. Sept. 9, 2014), *aff'd*, 830 F.3d 55 (2d Cir. 2016) (holding that handcuffing constituted an arrest even when officers suspected the defendant was involved in drug activity, because defendant did not pose a present threat when he cooperated with officers' instructions, was not a flight risk, and there was no indication he was armed); *cf. United States v. Fiseku*, 915 F.3d 863, 873–74 (2d Cir. 2018) (holding that handcuffing during an investigatory stop did not constitute arrest when officer suspected defendants were about to commit a home invasion which "heightened the risk that one or more suspects might be armed and that they might attempt to fight or flee"); *United States v. Martinez*, No. 19-CR-172, 2019 WL 6683049, at *7 (D. Conn.

14

Dec. 6, 2019) (holding that handcuffing did not constitute arrest when "officers had reasonable suspicion to believe that [defendant] had just participated in an illegal firearms transaction and that he was carrying at least one firearm in the pocket of his sweatshirt").

Because probable cause depends on "those facts available to the officer at the time of the arrest and immediately before it," if the heroin found on Plaintiff was found after he was arrested, it could not have constituted probable cause to effectuate the arrest. *Fabrikant*, 691 F.3d at 214 (quoting *Panetta*, 460 F.3d at 395). Because there is a dispute of fact as to what occurred after Defendants stopped Plaintiff's vehicle, this Court cannot determine whether the handcuffing constituted a formal arrest, and therefore it cannot determine whether the heroin found on Plaintiff's person constituted probable cause to arrest. *See Seamans v. Town of Canton*, No. 15-CV-1695, 2018 WL 3748158, at *3 (D. Conn. Aug. 7, 2018) (denying summary judgment on a false arrest claim when there was a dispute of fact as to plaintiff's behavior prior to handcuffing that was material to the determination of whether the handcuffing constituted an arrest); *Stratton v. Russell*, No. 13-CV-520, 2017 WL 1184191, at *5 (N.D.N.Y. Mar. 29, 2017) ("[A] district court may decide the issue of whether an arrest has been made where there can be but one conclusion as to the verdict that reasonable jurors could have reached . . . because there is an issue of fact regarding when an arrest actually occurred, the Court denies Defendant's motion for summary judgment.") (quotation marks and citation omitted).

### b.  Obstructing Governmental Administration

Next, the Court will assess the objective reasonableness of the officers' belief that probable cause existed to arrest Plaintiff for obstructing governmental administration. Section 195.05 of the New York Penal Law provides, in relevant part, that:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other

> governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]

*Id.* "Any interference must be physical and must obstruct an official function . . . authorized by law." *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) (citation and quotation marks omitted). The physical interference requirement is construed broadly, and it is satisfied "when an individual intrudes himself into, or gets in the way of, an ongoing police activity." *Kass v. City of N.Y.*, 864 F.3d 200, 210 (2d Cir. 2017) (alterations, quotation marks, and citation omitted).

"Probable cause to arrest for a violation of § 195.05 may be predicated on, amongst other things, obstructing a lawful search." *Esmont v. City of N.Y.*, 371 F. Supp. 2d 202, 210 (E.D.N.Y. 2005). However, resisting an illegal search cannot constitute obstruction of governmental administration. *See Dancy*, 843 F.3d at 112 ("[Plaintiff's] actions could not have constituted obstruction of governmental administration because [defendant's] *Terry* stop and frisk were unauthorized."); *Jackson v. City of N.Y.*, 939 F. Supp. 2d 219, 230 (E.D.N.Y. 2013) (concluding that because plaintiff's vehicle was unlawfully stopped, her failure to comply with an unjustified order to exit her vehicle did not create probable cause to justify arrest for obstruction of governmental administration).

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const., amend. IV. Warrantless searches and seizures are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (internal citations and footnote omitted). The *Terry* investigative stop and frisk is one such exception. *See Terry v. Ohio*, 392 U.S. 1, 22–28 (1968). In *Terry v. Ohio*, the Supreme Court expressly recognized that government interests in "effective crime prevention and detection," as well as in officer and public safety while pursuing

16

criminal investigations, could make it constitutionally reasonable "in appropriate circumstances and in an appropriate manner" to temporarily detain a person and pat him down for weapons "even though there is no probable cause to make an arrest." *Id.* at 22.

To justify a *Terry* stop, the officer must have "a reasonable basis to think that the person to be detained 'is committing or has committed a criminal offense.'" *Bailey*, 743 F.3d at 332 (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)). Reasonable suspicion requires more than an "inchoate suspicion or mere hunch." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000) (quoting *United States v. Glover*, 957 F.2d 1004, 1010 (2d Cir. 1992)). It "demands 'specific and articulable facts which, taken together with rational inferences from those facts,' provide detaining officers with a 'particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015) (citation omitted). This standard is "not high"; rather, it requires "only facts sufficient to give rise to a reasonable suspicion that criminal activity 'may be afoot[.]'" *Bailey*, 743 F.3d at 332 (quoting *Terry*, 392 U.S. at 30).

In assessing reasonable suspicion determinations, courts take into account the "totality of the circumstances supporting the investigatory stop," *United States v. Muhammad*, 463 F.3d 115, 121 (2d Cir. 2006), and "evaluate those circumstances 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training,'" *Bayless*, 201 F.3d at 133 (quoting *United States v. Oates*, 560 F.2d 45, 61 (2d Cir. 1977)). "An indication of possible illicit activity is properly informed by 'commonsense judgments and inferences about human behavior.'" *Singletary*, 798 F.3d at 60 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)).

The Supreme Court has recognized that a police officer making an investigatory stop "should not be denied the opportunity to protect himself from attack by a hostile suspect."

*Adams v. Williams*, 407 U.S. 143, 146 (1972) (citing *Terry*, 392 U.S. at 24).  As a result, "a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted." *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979).  "[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona*, 555 U.S. at 326–27.  In order to conduct this limited, self-protective search for weapons, an officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *United States v. Casado*, 303 F.3d 440, 445 (2d Cir. 2002).  "The purpose of [a frisk] is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams*, 407 U.S. at 146.  An "officer's action must be justified at its inception" therefore, "when reviewing the constitutionality of a frisk for weapons, the Court must examine the facts that preceded the frisk." *United States v. Weaver*, 9 F.4th 129, 140 (2d Cir. 2021) (citation omitted).

"In a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona*, 555 U.S. at 327.  "The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Id*.  In the context of a legal car stop, an officer may request that passengers in the subject car exit the vehicle. *See Maryland v. Wilson*, 519 U.S. 408, 414–15 (1997). "To justify a pat[-]down of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona,* 555 U.S. at 327.

There is no dispute Defendants observed Plaintiff's vehicle change lanes without a signal, move from one lane to another lane unsafely, and travel approximately 15 miles below the posted speed limit. (Defs.' 56.1 ¶ 3.) Accordingly, it was lawful for Defendants to stop Plaintiff's vehicle pending inquiry into the violation of Section 1163(d) of New York's Vehicle and Traffic Law, which requires that signals be used to change lanes. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009) ("[R]easonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop."); *United States v. Tillard*, No.18-CR-6091, 2019 WL 8105894, *4 (W.D.N.Y. 2019) (holding that officers had probable cause to initiate a traffic stop where they witnessed conduct that "violated section 1163(b) of New York's Vehicle and Traffic Law") (internal quotation omitted), *report and recommendation adopted by*, No. 18-CR-6091, 2020 WL 57198 (W.D.N.Y. Jan. 6, 2020).

Defendants have not advanced the position in their Motion for Summary Judgment that objectively reasonable suspicion existed that Plaintiff was armed and dangerous at the time Defendant Ranno commenced the frisk. (*See generally* Defs.' Mem.; Defs.' Reply Mem.)[3] The only relevant facts the Parties have made the Court aware of are that (1) Defendants observed Plaintiff's vehicle change lanes without a signal, move from one lane to another lane unsafely, and travel approximately 15 miles below the speed limit at approximately 10:30 PM, and (2)

---

[3] In fact, Defendants assert that "[a]t the time of the search, Defendants had founded suspicion that criminal activity was afoot." (Defs.' 56.1 Resp. ¶ 22.)

Plaintiff and Cooper gave Defendants different reasons for their travel.  (Defs.' 56.1 ¶¶ 2–3; Pl.'s 56.1 ¶ 26.)[4]

Reasonable suspicion to stop "may be based, at least in part, on an implausible story, an implausible explanation of the purpose of a trip, or a story that simply does not ring true." *United States v. Santillan*, 902 F.3d 49, 57–58 (2d Cir. 2018) (collecting cases); *see also United States v. Thompson*, 941 F.2d 66, 70–71 (2d Cir. 1991) (holding that defendant's lies about her travel, which agents knew to be false, combined with "nervous behavior, frantic gestures, [and] circumlocutions about the station . . . provided the officers with reasonable and articulable suspicion to warrant her detention").  However, this Court is not convinced that without more, the inconsistent stories here could constitute reasonable suspicion to frisk.  In *Santillan*, officers pulled over a vehicle for a traffic infraction and the passengers were unable "to specify where they had come from which suggested . . . that the men were struggling to fabricate a cover story." 902 F.3d at 58.  It was this fact *combined* with the passengers' "extreme nervousness," illustrated by their avoidance of eye contact and visibly shaking hands, the officer's observation of several indicators of narcotics activity (the differences between the seat heights and the presence of multiple cell phones), and the fact that they were driving in a location the officer knew was a corridor for drug trafficking, that constituted sufficient basis to warrant a frisk.  *Id*. at 53, 58.

Defendants have failed to provide additional facts from which they could have reasonably inferred that Plaintiff was armed and dangerous that would comport with caselaw from this Circuit.  For example, Defendants do not claim that they saw Plaintiff or Cooper hide anything or observed any suspicious bulges on their persons. *Cf. United States v. Lambert*, No. 21-CR-585,

---

[4] In Defendants' 56.1 Response, they state only that Defendant "Ranno also considered a number of other factors in finding founded suspicion that there was a criminal activity afoot" besides the conflicting accounts of travel.  (Defs.' 56.1 Resp. ¶ 26.)

2022 WL 2873225, at *7 (S.D.N.Y. July 21, 2022) (holding that "nervous, evasive behavior"

combined with the defendant appearing "to place something under the driver's seat after he was

stopped, [was] sufficient to establish reasonable suspicion that [the defendant] was armed and

dangerous."); *United States v. Santillan*, No. 13-CR-138, 2013 WL 4017167, at *10 (S.D.N.Y.

Aug. 7, 2013) (holding reasonable suspicion to frisk vehicle occupant based on his "nervous

behavior" and inability to provide "valid answers to simple questions," coupled with the fact that

another occupant had "an unknown bulge in [his] back [pants] pocket[,] . . . was hesitant to exit

the [vehicle], and looked over his area where he was sitting before leaving the vehicle"); *United

States v. McCrimmon*, No. 11-CR-575, 2012 WL 5974070, at *6 (S.D.N.Y. Nov. 26, 2012)

(holding there was reasonable suspicion to frisk vehicle passengers when car was stopped

pursuant to a narcotics violation and the officer saw a bulge near defendant's shoe).  Nor do

Defendants contend that Plaintiff made any furtive movements or was acting nervously or

evasively.  *Cf. United States v. Paulino,* 850 F.2d 93, 98 (2d Cir. 1988) (holding that "furtive

movement provided a legal basis for the protective search"); *United States v. Winkfield*, No. 16-

CR-98, 2016 WL 4190415, at *9 (S.D.N.Y. Aug. 1, 2016) (holding reasonable suspicion to frisk

vehicle occupants when the car had tried to evade police and was ultimately pulled over in a high

crime area, the vehicle occupants were in a "frantic state," exhibiting "atypically nervous

demeanor" that was "indicative of an individual trying to hide a weapon[,]" and the sergeant had

observed movement consistent with trying to conceal illegal substances); *United States v. Harris*,

No. 13–CR–556, 2013 WL 6728136, at *5 (S.D.N.Y. Dec. 20, 2013) (finding reasonable

suspicion to frisk vehicle occupants where "prior to the car stop, the officers had observed

someone running quickly away from the car, suggesting to them that the person had been in

some kind of danger," the officers "observed the [d]efendant turn away and make a movement

21

suggesting that an object was being placed in the [d]efendant's clothing," the passengers were observed as "nervous, fidgety, and evasive," and the stop took place "in a high crime area"). Defendants have also not offered any facts about the neighborhood where the encounter took place. *Cf. Weaver*, 9 F.4th at 147–50 (holding "suspicious movements concentrated around his waist and pelvis" combined with "nervous and unusual behavior" and the fact that the stop "occurred in a high crime neighborhood" constituted reasonable suspicion to frisk"); *United States v. Padilla*, 548 F.3d 179, 189 (2d Cir. 2008) (holding that the "totality of the circumstances in this case—the high-crime neighborhood, the sight of two men surreptitiously following a man whose appearance suggested drug use down an otherwise-deserted street, the choice of a dark path not commonly used at night, the apparent adjustment of a concealed firearm" justified a stop and frisk); *United States v. Ramirez*, No. 02-CR-1228, 2003 WL 260572, at *6 (S.D.N.Y. Feb. 5, 2003) (holding a frisk was warranted "where a police officer reasonably suspect[ed] that he has interrupted a drug sale or other narcotics-related transaction in progress, at night on a New York City street in a location noted for narcotics activity and disorderly behavior, and the officer and a single colleague are faced with three suspects, one of whom has acted nervously and failed to respond to the officer's questions"). Finally, Defendants do not claim they had reason to know or suspect Plaintiff was a violent person. *United States v. Barnes*, No. 22-CR-109, 2022 WL 12399322, at *5 (S.D.N.Y. Oct. 21, 2022) ("Here, the Court finds that the officers had reasonable suspicion to stop and frisk [the defendant] because he generally matched the description of the shooter and was in the immediate vicinity of the shooting minutes after it was reported."); *United States v. Pagan*, No. 12-CR-267, 2013 WL 3967641, at *3–4 (D. Conn. July 31, 2013) (holding reasonable suspicion existed to frisk vehicle occupants because officers knew passenger was a known member of a violent street gang, had a "reputation for being a violent person," and

another passenger was acting nervously).  Defendants have not indicated that Plaintiff behaved

abnormally or did anything other than comply with their instructions before the frisk.

Thus, on the record currently before the Court and taking the facts in the light most

favorable to Plaintiff, the frisk could not have been justified by a reasonable belief that Plaintiff

was armed and dangerous.  *See United States v. Jackson*, No. 15-CR-106, 2015 WL 4557401, at

*9 (S.D.N.Y. July 29, 2015) (holding no reasonable suspicion for a frisk when defendant, despite

being nervous, did nothing consistent with trying to access or conceal a firearm, did not refuse to

follow police instructions, and there was no suspicion of a violent crime in progress).

However, the frisk may have been legal if it was conducted pursuant to consent.  "It is

'well settled that one of the specifically established exceptions to the requirements of both a

warrant and probable cause is a search that is conducted pursuant to consent.'"  *United States v.*

*Gomez*, 877 F.3d 76, 98 (2d Cir. 2017) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219

(1973)); *United States v. Lewis*, 386 F.3d 475, 481 (2d Cir. 2004) (recognizing that where an

authorized party consents to a search "neither a warrant nor probable cause is necessary").

"When 'the government relies on consent to justify a warrantless search, it bears the burden of

proving by a preponderance of the evidence that the consent was voluntary.'"  *United States v.*

*Hernandez,* No. 19-CR-97, 2020 WL 3257937, at *11 (S.D.N.Y. June 16, 2020) (quoting *United*

*States v. Snype,* 441 F.3d 119, 131 (2d Cir. 2006)).  "To be voluntary, the consent must be

obtained without coercion."  *United States v. Mangini*, No. 20-CR-162, 2021 WL 1268507, at *1

(S.D.N.Y. Apr. 6, 2021) (citing *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995)).

Voluntariness is determined by reference to the "'totality of all the circumstances.'"  *United*

*States v. Isiofia*, 370 F.3d 226, 231 (2d Cir. 2004) (quoting *Schneckloth*, 412 U.S. at 227).  A

person need not utter "the talismanic phrase: 'You have my permission to search;'" rather,

"consent may be inferred from an individual's words, gestures, or conduct." *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir. 1981); *see United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) ("Consent may be express or implied."). "[T]he ultimate question presented is whether the officer had a reasonable basis for believing that there had been consent to the search." *Garcia*, 56 F.3d at 423 (quotation marks and citation omitted).

Defendants contend that Defendant Ranno asked Plaintiff if he could search his vehicle and his person, and then Plaintiff, without any instructions from Defendants, exited his vehicle, raised his hands above his head with his palms facing toward Defendant Ranno, and spread his feet in wide stance, which Defendant Ranno understood to indicate that Plaintiff consented to a search of his body. (Ranno Decl. ¶¶ 18–19; Carrozzo Decl. ¶¶ 17–18). Courts have held that such nonverbal conduct can constitute consent to a search. *See, e.g., United States v. Vongxay,* 594 F.3d 1111, 1119–20 (9th Cir. 2010) (holding defendant consented to search by raising his hands to his head in response to an officer's request to search for weapons); *United States v. Chrispin,* 181 F. App'x 935, 939 (11th Cir. 2006) (per curiam) ("[A]lthough [defendant] did not express his verbal assent to be searched, his body language—turning away from [the officer] and placing his hands on the police cruiser as if preparing to be searched—gave implied consent"); *United States v. Jones,* 254 F.3d 692, 695 (8th Cir. 2001) (affirming district court's holding that defendant's gesture of opening his arms in response to a request to search constituted an implied consent); *United States v. Mendoza–Cepeda,* 250 F.3d 626, 629 (8th Cir. 2001) (holding that defendant's gesture of raising arms in response to request to search torso constituted implied consent); *United States v. Wilson,* 895 F.2d 168, 172 (4th Cir. 1990) (affirming finding of implied consent where defendant responded to request to search by "shrugging his shoulders and raising his arms"); *United States v. Toole*, No. 06-CR-6024, 2008

WL 2323362, at *14 (W.D.N.Y. Jan. 11, 2008), *report and recommendation adopted*, No. 06-CR-6024, 2008 WL 2354959 (W.D.N.Y. June 3, 2008) (holding consent was implied where defendant "extended and raised his arms to the side" in response to officer's second request to search).  However, there is a dispute as to whether Plaintiff consented to Defendant Ranno's frisk.  Plaintiff testified that he explicitly told the officers that they could not search him or his car.  (Yoon Decl. Ex. A, at 85:8–86:8.)  Accordingly, this Court cannot determine as a matter of law that the frisk was authorized by law because Plaintiff consented to Defendant Ranno's frisk.

Finally, there is also a dispute as to whether Plaintiff physically interfered with Defendant's search.  Defendants contend that Plaintiff struck Defendant Ranno while Defendant Ranno was conducting the frisk, while Plaintiff counters that he never used force against either Defendant.  (Defs.' 56.1 Resp. ¶ 38.)[5]  Accordingly, because there is dispute both as to whether the frisk was lawful and whether Plaintiff interfered with said search, this Court cannot determine as a matter of law whether Defendants had probable cause to arrest Plaintiff for obstructing governmental administration.

### c.  Resisting Arrest

Resisting arrest on its own cannot constitute probable cause to arrest: the Second Circuit, in *Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003), made clear that under New York law, there must be probable cause to arrest someone for an independent crime apart from "resisting arrest" in order to defeat a false arrest verdict.  *Id*. at 336.  The *Curry* court noted that under New York law, "'[a] person is guilty of resisting arrest when he intentionally prevents or attempts to

---

[5] Defendants also contend that Plaintiff ran away while Defendant Ranno was conducting the frisk.  (Ranno Decl. ¶ 22; Carrozzo Decl. ¶ 20.)  This fact was not present in Defendants' 56.1 Statement, but in any event, it appears to be disputed as Plaintiff states in his Memorandum that Plaintiff was 65 years old at the time of the incident, is 30% disabled on one leg, and "cannot run even if he wanted to."  (Pl.'s Mem. 4.)

prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.'" *Id*. (quoting N.Y. Penal Law § 205.30).  The Second Circuit went on to explain that it is "well established in New York that probable cause to arrest is a prerequisite for making an authorized arrest, and if there is no probable cause to arrest a person, that person cannot be guilty of resisting arrest." *Id*.  (quotation marks and citation omitted).  Accordingly, this Court need not analyze whether there was probable cause that Plaintiff was resisting arrest—as resisting arrest on its own could not constitute probable cause to arrest Plaintiff.

<u>d.  Bad Faith</u>

Plaintiff contends that he is entitled to summary judgment because Defendants' search was grounded upon founded suspicion as opposed to reasonable suspicion and constitutes "bad faith and illegal conduct" which "negates the existence of probable cause."  (Pl.'s Mem. 13.) Plaintiff posits that it is "well-settled law that probable cause may be [sic] rebutted by the existence of fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  (*Id*.)  In support, Plaintiff cites to *Lewis v. City of New York*, 591 F. App'x 21 (2d Cir. 2015).  (*Id*.)  In *Lewis*, the Second Circuit noted that an *indictment* by a grand jury creates a presumption of probable cause which "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  591 F. App'x at 22.  *Lewis* does not support Plaintiff's position that Defendants' search, even if undertaken with bad faith, would negate probable cause to arrest.  In fact, courts in the Second Circuit have held the opposite in false arrest cases: the determination of the existence of "probable cause to arrest . . . upon discovering [contraband] does not depend on the legitimacy of the initial stop and search."  *Turner v. City of N.Y.*, No. 18-CV-9626, 2019 WL 6173701, at *5 (S.D.N.Y. Nov. 19, 2019) (citing *Townes v. City of N.Y.*, 176 F.3d 138, 149 (2d Cir. 1999)); *see*

*also Guzman v. United States*, No. 11-CV-5834, 2013 WL 543343, at *5 (S.D.N.Y. Feb. 14, 2013) (noting that "even if the officers lacked probable cause to search and seize evidence, once that evidence is seized, it can validly constitute probable cause to arrest" under the false arrest framework).

Because the Court cannot determine as a matter of law that Defendants did not have probable cause to arrest Plaintiff, Plaintiff's Motion for Summary Judgment is denied.

### 2.  Malicious Prosecution

"To state a § 1983 malicious prosecution claim a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Rodriguez v. City of N.Y.*, No. 21-CV-8565, 2022 WL 3587598, at *5–6 (S.D.N.Y. Aug. 22, 2022) (quoting *Cornelio v. Connecticut*, 32 F.4th 160, 179 (2d Cir. 2022)). To state a claim for malicious prosecution under New York law a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019) (quotation marks and citation omitted).  In addition, to prevail on a cause of action for malicious prosecution under Section 1983, the plaintiff must establish that "there was a . . . sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Roman v. City of Mount Vernon*, No. 21-CV-2214, 2022 WL 2819459, at *10 (S.D.N.Y. July 19, 2022) ("In addition to the elements of a state-law malicious prosecution claim, however, to state a federal malicious prosecution claim under § 1983, a plaintiff must also have suffered a post-arraignment deprivation of liberty implicating his Fourth Amendment rights.").

Defendants argue they are entitled to summary judgment on the malicious prosecution claim because there was "probable cause for Defendants to believe that Plaintiff was guilty of possession of controlled substance . . . as it is undisputed that he was in possession of heroin at the time of the arrest" and there is no evidence that Defendants acted with malice.  (Defs.' Mem. 7.)  Defendants additionally argue that Defendant Ranno is entitled to summary judgment because he did not commence criminal proceedings against Plaintiff.  (*Id*. at 9.)  Plaintiff argues that the frisk, which he asserts was not legal, suffices to show malice and that Defendant Ranno's search, assault, and arrest of Plaintiff are sufficient to constitute the commencement of a criminal proceeding.  (Pl.'s Mem. 14–15.)

a.  Initiation of a Criminal Proceeding

 "Although there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, a plaintiff may overcome that presumption by demonstrating that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  *Marom v. Town of Greenburgh*, No. 13-CV-4733, 2017 WL 1064682, at *2 (S.D.N.Y. Mar. 20, 2017), *aff'd*, 722 F. App'x 32 (2d Cir. 2018) (citation and quotation marks omitted).  Regarding claims against police officers, "courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors."  *Id*. (quotation marks and citations omitted); *see also Cameron v. City of N.Y.*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments.") (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997)).  It is undisputed that Defendant

28

Carrozzo, not Defendant Ranno, provided the sworn statements in the felony complaints and misdemeanor information and signed them.  (Defs.' 56.1 ¶ 14.)  Plaintiff has not provided any fact that indicates that Defendant Ranno was involved in the prosecution of his case or created false information.  (*Id*. ¶ 17.)  Accordingly, summary judgment is granted for Defendants as to the malicious prosecution claim against Defendant Ranno.  *See Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (noting that when there was "no record evidence of any police officer other than [the officer who signed the statement against plaintiff] being involved in the prosecution of [the plaintiff] . . .  summary judgment in favor of [the other named police officer]," involved in the arrest but not the prosecution was warranted); *cf. Delanuez v. City of Yonkers,* No. 20-CV-4476, 2022 WL 16540682, at *7 (S.D.N.Y. Oct. 28, 2022) (holding that first element of malicious prosecution claim was alleged when the defendant swore to and signed the felony complaint).

### b.  Termination of the Proceeding in Plaintiff's Favor

"To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction."  *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).  There is no dispute that all criminal charges against Plaintiff were dismissed.  (Pl.'s 56.1 ¶¶ 41–42.)  Based on the Supreme Court's recent holding in *Thompson*, this is sufficient to establish that the proceedings ended in Plaintiff's favor.

### c.  Probable Cause

Just as probable cause is a complete defense to a claim of false arrest, "continuing probable cause is a complete defense to a constitutional claim of malicious prosecution."  *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *see also Manganiello v. City of N.Y.*, 612 F.3d 149,

161–62 (2d Cir. 2010) ("Probable cause is a complete defense to a claim of malicious prosecution in New York[.]") (citation omitted).  "Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 243 (2d Cir. 2020) (alterations omitted).  "The Second Circuit has clarified that probable cause for a malicious prosecution claim means probable cause to believe that [the prosecution] could succeed[.]" *Delanuez*, 2022 WL 16540682, at *8 (quoting *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003)) (quotation marks omitted).  The Second Circuit has also cautioned courts not to "conflate probable cause to arrest with probable cause to believe that [a plaintiff] could be successfully prosecuted," because in a malicious prosecution action, "[o]nly the latter kind of probable cause is at issue." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).  Therefore, in instances where evidence "would clearly not be admissible", "there would be no probable cause to believe that the prosecution could succeed."  *Boyd*, 336 F.3d at 77. "Courts applying this standard have largely held that . . . evidence obtained in violation of a plaintiff's Fourth Amendment rights cannot be relied on in arguing that there was probable cause to believe the plaintiff could be successfully prosecuted." *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *6 (S.D.N.Y. Mar. 9, 2017) (collecting cases).  Thus, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013).

The Court recognizes that some courts have interpreted the Second Circuit's decision in *Townes v. City of N.Y.*, 176 F.3d 138 (2d Cir. 1999), as holding otherwise.  *See, e.g., Mangum v. City of N.Y.*, No. 15-CV-8810, 2016 WL 4619104, at *7 (S.D.N.Y. Sept. 2, 2016) (holding that "[t]he Second Circuit. . . has squarely rejected the theory that evidence that is a 'fruit of the

poisonous tree' so as to warrant suppression in a criminal trial must be excluded for purposes of assessing probable cause in a civil § 1983 action"); *Cyrus v. City of N.Y.*, No. 06-CV-4685, 2010 WL 148078, at *4 (E.D.N.Y. Jan. 14, 2010) ("The court's conclusion that the exclusionary rule does not apply to the probable cause determination in malicious prosecution claims is fully supported by the decisions cited for support." (internal quotation marks omitted)).

In *Townes*, the Second Circuit held that in a § 1983 action, traditional causation analysis was not supplanted by the "fruit of the poisonous tree" doctrine, an evidentiary doctrine used in criminal law to suppress the fruits of an unlawful search. *See* 176 F.3d at 146. The court said nothing about whether illegally obtained evidence could be used to support a defense of probable cause in connection with a malicious prosecution claim—the claim at issue in *Townes* was not malicious prosecution, it was false arrest. *Id*. at 145. "Accordingly, the principle established in *Boyd*—which applies to malicious prosecution cases and was decided four years after *Townes*, controls the disposition of [a malicious prosecution cause of action]." *Vasquez,* 2017 WL 946306, at *9; *see also Delanuez*, 2022 WL 16540682, at *8 (applying *Boyd*'s "would clearly not be admissible" standard to malicious prosecution claim); *Harper v. Town of Newburgh*, No. 18-CV-2647, 2020 WL 1140858, at *16 (same). Therefore, this Court must determine whether there is a dispute as to the existence of probable cause to believe that Plaintiff could be successfully prosecuted, which includes analysis of whether the evidence of the heroin would have been admissible.

As discussed above, *supra*, II.B.1, there is a question as to whether Defendants had probable cause to arrest Plaintiff. There are disputes of fact pertaining to (1) the legality of defendant's frisk of Plaintiff and (2) Plaintiff's behavior in the wake of the frisk that prevent a determination as a matter of law regarding the existence of probable cause for obstructing

governmental administration.  Therefore, this Court cannot determine as a matter of law whether Defendants had probable cause to believe that Plaintiff could be successfully prosecuted for obstructing governmental administration.

Because this Court cannot determine when exactly Plaintiff was arrested and whether there was probable cause to arrest Plaintiff, it cannot determine as a matter of law whether the heroin that was procured from Plaintiff after he was handcuffed would be admissible.  "The Second Circuit . . . has held that a search incident to arrest may be lawful . . . if there was probable cause to make the arrest." *United States v. Bell*, No. 19-CR-717, 2020 WL 370342, at *2 (S.D.N.Y. Jan. 22, 2020) (quotation marks and citation omitted); *see also Smith v. Ohio*, 494 U.S. 541, 543 (1990) ("[S]earch[ ] incident to arrest permits the police to search a lawfully arrested person and areas within his immediate control."); *Moore v. Hearle*, 639 F. Supp. 2d 352, 356 (S.D.N.Y. 2009) ("Generally, officers are justified in conducting searches incident to a lawful arrest in order to ensure the safety of officers as well as to prevent the destruction of evidence.").  Evidence seized from a search that "stemmed from an illegal arrest . . .  must necessarily be suppressed as the fruit of the poisonous tree." *United States v. Valentine*, 539 F.3d 88, 96 (2d Cir. 2008); *United States v. Barnes*, No. 22-CR-109, 2022 WL 12399322, at *5 (S.D.N.Y. Oct. 21, 2022) ("[T]he fruit of the poisonous true doctrine requires the exclusion of the fruits of illegally obtained evidence." (quotation marks and citation omitted)).

Accordingly, if the heroin in this case was seized as the byproduct of an illegal search incident to arrest, it would "clearly not be admissible." *Boyd*, 336 F.3d at 77.  Here, whether the evidence was obtained in violation of Plaintiff's Fourth Amendment right "is a genuine issue of material fact that would have to be resolved before the element of probable cause could be established." *Id.*; *see also Singletary v. Allen*, 588 F. Supp. 3d 359, 372 (W.D.N.Y. 2022)

("[Because] genuine issues of material fact exist as to . . . whether it was a lawful arrest supported by probable cause. . . .  the Court cannot conclude as a matter of law that the search was legally permissible as incident to arrest.").  Therefore, the Court cannot determine as a matter of law whether there was probable cause to believe Plaintiff could successfully be prosecuted for the narcotics offenses.[6]

Because a person cannot be guilty of resisting arrest if there is no probable cause to arrest, this Court cannot determine whether there was probable cause to believe Plaintiff could be successfully prosecuted for resisting arrest.  *Curry*, 316 F.3d at 336 ("[P]robable cause to arrest is a prerequisite for making an authorized arrest, and if there is no probable cause to arrest a person, that person cannot be guilty of resisting arrest.") (quotation marks and citation omitted).

### d.  Malice

"Lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment."  *Torres v. City of N.Y.*, No. 20-CV-4007, 2022 WL 955152, at *9 n.6 (E.D.N.Y. Mar. 30, 2022) (quoting *Ricciuti*, 124 F.3d at 131); *see also Boyd*, 336 F.3d at 78 ("A lack of probable cause generally creates an inference of malice.") (citation omitted).  Accordingly, once a court finds "an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well."  *Boyd*, 336 F.3d at 78.  And, so it is here.

### e.  Post-Arraignment Deprivation of Liberty

Neither Party has provided evidence or pointed to a lack of evidence pertaining to any post-arraignment deprivation of liberty that Plaintiff suffered.  Summary judgment is appropriate

---

[6] As discussed above, *supra*, II.B.1, this Court cannot determine whether the fact that Defendant Ranno felt an object on Plaintiff's inner thigh during the frisk is disputed without conducting an extensive review of the record, accordingly it cannot determine that the frisk created probable cause to arrest Plaintiff.  (Ranno Decl. ¶ 20.)

where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P.*, 735 F.3d at 123 (alteration, citation, and quotation marks omitted). Defendants have not pointed to the lack of evidence of post-arraignment deprivation of liberty, accordingly, summary judgment on the malicious prosecution claim cannot be granted in their favor.

### 3.  Excessive Force

"Claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen are analyzed under the Fourth Amendment and its reasonableness standard." *Pateman v. City of White Plains*, No. 17-CV-6156, 2020 WL 1497054, at *13 (S.D.N.Y. Mar. 25, 2020) (quotation marks, alteration, and citation omitted). "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting [the officers], without regard to [the officers'] underlying intent or motivation.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). To evaluate the reasonableness of an officer's conduct, a court should "consider the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *see also Kerman v. City of*

*N.Y.*, 261 F.3d 229, 239 (2d Cir. 2001) (observing that the reasonableness determination "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" (quotation marks and citation omitted)).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Sterling v. Akinyombo*, No. 20-CV-10804, 2022 WL 2657223, at *4 (S.D.N.Y. July 8, 2022) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "[A] plaintiff must plead and prove that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation and quotation marks omitted); *see also Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (dismissing allegations against a defendant for lack of personal involvement because "Plaintiff's general allegation that all defendants were involved in the alleged constitutional violations [did] not rescue the claims against" a particular defendant) (quotation marks and citation omitted).

Defendants argue that Defendant Carrozzo is entitled to summary judgment for the excessive force claim because he only handcuffed Plaintiff. (Defs.' Mem. 10–11.) Defendant Carrozzo testified that he did not punch or deliver any strikes to Plaintiff. (Konan Decl. Ex. 3 at, 79:15–16, 81:24–25). He testified that Defendant Ranno struck Plaintiff in the face. (*Id*. at 62:10–20, 69:19–70:2). It is undisputed that Defendant Ranno delivered closed fist strikes to Plaintiff's face. (Defs.' 56.1 Resp. ¶ 35.)

Plaintiff has not made any claim against Defendant Carrozzo regarding excessive force due to handcuffing. (*See generally*, AC; Plaintiff's Mem.; Plaintiff's Reply Mem.) Instead,

Plaintiff disputes Defendants' contention that Defendant Carrozzo did not strike or hit Plaintiff, arguing that "Plaintiff was struck by both officers until he lost consciousness." (Pls.' 56.1 ¶ 19.) In support, Plaintiff claims he testified that "both officers hit him until he lost consciousness" and that "he was hit and had bruises by both officers." (Pl.'s Mem. 15.)  Plaintiff did use the general term "they" to describe who "beat" him in his deposition. (Yoon Decl. Ex. A, at 98:20–99:5.)  However, when asked if it was one officer or two officers who struck him, he testified: "I don't know if it was one officer or two officers." (*Id*.)  Plaintiff was once again asked whether he remembered if it was one officer or more than one officer who struck him, and he again testified that he did not remember. (*Id*. at 103:23–104:2.)

Plaintiff's argument that Defendant Carrozzo "directly participated constitutes speculation, which is not a sufficient ground upon which to oppose summary judgment." *Ridge v. Davis*, No. 18-CV-8958, 2022 WL 357020, at *9–10 (S.D.N.Y. Feb. 7, 2022) (quotation marks and citation omitted) (holding that plaintiff's belief that defendants punched and kicked him because they were in the general vicinity and the assault "felt like . . . more than one [officer]" did not support an excessive force claim based on direct participation); *see also Bermudez v. Edmonds*, No. 15-CV-3240, 2017 WL 11507652, at *5 (E.D.N.Y. Dec. 19, 2017) (holding that plaintiff's testimony that he was "kicked and punched all over" by unidentified officers "until losing consciousness" did not support a non-speculative inference that defendant hit him "at some point after losing consciousness") (internal quotations omitted); *Carey v. Maloney*, 480 F. Supp. 2d 548, 557 (D. Conn. 2007) (holding that officer's "mere presence at the scene where [plaintiff's] rights were allegedly violated" was insufficient to sustain excessive force claim against him).

Therefore, Defendants' Motion for Summary Judgment regarding the excessive force claim against Defendant Carrozzo is granted.[7]

### 4.  Qualified Immunity

 "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The qualified immunity defense, thus, is a broad shield that protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Kass v. City of N.Y.*, 864 F.3d 200, 206 (2d Cir. 2017) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013)).

"[I]n the qualified immunity context, an officer invoking the probable cause defense need only establish that he or she acted with arguable probable cause[.]" *Schlaepfer v. City of N.Y.*, No. 20-CV-3339, 2022 WL 4484571, at *9 (S.D.N.Y. Sept. 27, 2022) (quotation marks and citation omitted); *Kass*, 864 F.3d at 206 ("An officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged.").  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Falls v. (Police Officer) Detective*

---

[7] A "police officer who does not personally inflict the injury at the core of an excessive use of force claim may still be liable under § 1983 if the officer was present at the assault, and fails to intervene to prevent the harm when the officer had a reasonable opportunity to do so." *Ridge v. Davis*, No. 18-CV-8958, 2022 WL 357020, at *10 (S.D.N.Y. Feb. 7, 2022) (quotation marks and citation omitted).  However, Plaintiff has not pled or advanced a failure to intervene theory in his Amended Complaint or in any subsequent briefing, accordingly the Court does not consider such a theory of liability.  (*See generally* AC; Pl.'s Mem.; Pl.'s Reply Mem.)

*Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *12 (S.D.N.Y. Mar. 26, 2021) (quoting *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007); *see also Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (same).

"[S]ummary judgment for defendants on grounds of qualified immunity is . . . appropriate only . . . if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff and with all permissible inferences drawn in his favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *Turner v. City of N.Y.*, No. 18-CV-9626, 2019 WL 6173701, at *6 (S.D.N.Y. Nov. 19, 2019) (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)). "In the event that there are triable disputes as to the circumstances that could dictate whether the defendants could reasonably believe that his conduct was lawful, summary judgment based on an immunity defense must be denied." *Allen v. N.Y.C. Dep't of Correction*, No. 06-CV-7205, 2010 WL 1644943, at *15 (S.D.N.Y. Mar. 17, 2010), *report and recommendation adopted*, No. 06-CV-7205, 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010).

Defendants argue that because there was "no violation of Plaintiff's constitutional rights" Defendants could not have violated rights that were "clearly established at the time of the alleged incidents." (Defs.' Mem. 12–13.) However, as there is a dispute as to whether Plaintiff's constitutional rights were violated, the Court cannot grant Defendants summary judgment on that basis.

Defendants also argue they are entitled to qualified immunity because they, at a minimum, "had arguable probable cause to support Plaintiff's arrest as 350 wax paper envelopes containing heroin were recovered from Plaintiff." (Defs.' Mem. 12.) The Court will address this argument as it applies to the false arrest claim and malicious prosecution claim in turn.

a.  False Arrest

As discussed above, because the heroin was recovered after Plaintiff was handcuffed, and the Court cannot determine whether the handcuffing constituted a formal arrest, it cannot determine whether the heroin created arguable probable cause to arrest Plaintiff.  It is well-established that officers must have probable cause to arrest *before* effectuating an arrest, accordingly, contraband found pursuant to a search incident to arrest cannot establish probable cause for that same arrest.  *See Fabrikant*, 691 F.3d at 214 (explaining that probable cause determinations depend on "those facts available to the officer *at the time of the arrest and immediately before it*") (emphasis added) (quoting *Panetta*, 460 F.3d at 395); *Jaegly*, 439 F.3d at 153 ("The Supreme Court recently held that the probable cause inquiry is based upon whether the facts known by the arresting officer *at the time of the arrest* objectively provided probable cause to arrest.") (emphasis added) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *see also United States v. Donaldson*, 793 F.2d 498, 503 (2d Cir. 1986) ("[C]are must be taken to avoid bootstrapping that allows the fruits of a search incident to an arrest to provide the basis for the arrest."); *United States v. Davis*, 111 F. Supp. 3d 323, 334 n.7 (E.D.N.Y. 2015) ("Bootstrapping evidence found in a search incident to arrest . . . so that the fruits of a search incident to arrest themselves provide the justification for the arrest, is not permissible.") (quotation marks omitted).  Accordingly, viewing the facts in the light most favorable to Plaintiff, it was not objectively reasonable for Defendants to believe that the contraband created probable cause to arrest if the contraband was discovered after the arrest.

Defendants have not argued that they had arguable probable cause to arrest Plaintiff for obstructing governmental administration.  (*See generally*, Defs.' Mem.; Defendant's Reply Mem.)  "Since qualified immunity is as an affirmative defense, defendants 'bear the burden of

showing that the challenged act was objectively reasonable in light of the law existing at that time.'" *Allen*, 2010 WL 1644943, at *15.  Defendants have not attempted to make such a showing.  (*See generally*, Defs.' Mem.; Defendant's Reply Mem.)  In any event, the material factual disputes underpinning the probable cause determination for obstructing governmental administration—for instance, whether or not Plaintiff struck Defendant Ranno—make a granting of qualified immunity on the false arrest and malicious prosecution claims inappropriate here as such facts are material to a determination of reasonableness.  *See Kerman*, 261 F.3d at 240 ("[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." (quotation marks and citation omitted)); *see also Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (holding that when material facts pertaining to immunity are in dispute, the appropriate procedure is to allow the jury to resolve any disputed facts material to the qualified immunity issue, so that the court can make the "ultimate determination of whether the officer's conduct was objectively reasonable").

### b.  Malicious Prosecution

Because the Court cannot determine whether there was arguable probable cause to arrest Plaintiff, it also cannot determine whether there was arguable probable cause to believe Plaintiff could be successfully prosecuted for the obstructing governmental administration offense or a controlled substance offense based on the heroin discovered after handcuffing.  Accordingly, the Court cannot grant Defendants summary judgment on the malicious prosecution claim on the basis that they had arguable probable cause to believe Plaintiff could be successfully prosecuted on the obstructing governmental administration offense or the controlled substance offenses. *Cooper v. Dieugenia*, No. 14-CV-6136, 2017 WL 818367, at *7 (E.D.N.Y. Feb. 27, 2017) ("[G]iven the parties' disputes over key facts and the absence of other material information, the

Court cannot determine, as a matter of law, whether officers of reasonable competence could disagree on whether the probable cause test was met."); *Bryant v. Serebrenik*, No. 15-CV-3762, 2016 WL 6426372, at *5 (E.D.N.Y. Oct. 28, 2016) ("The same disputed facts that prevent defendants from establishing probable cause also doom their qualified immunity defense at this stage.").

### III.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted in part and denied in part.  Defendants' Motion for Summary Judgment is granted on the malicious prosecution claim as it relates to Defendant Ranno and the excessive use of force claim as it relates to Defendant Carrazzo. Defendants' Motion for Summary Judgment is denied on the false arrest claim and the malicious prosecution claim as it relates to Defendant Carrazzo.

The Court will hold a status conference on May 4, 2023, at 3:30 PM.  The Clerk of the Court is respectfully requested to terminate the pending motion at Dkt. No. 38.


SO ORDERED.

Dated:   March 28, 2023
         White Plains, New York

_____
      KENNETH M. KARAS
      United States District Judge

41